DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | CASE NO. 5:09-CV-0777 |
| THE NORTHWESTERN MUTUAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| | ) | |
| v. | ) | |
| | ) | |
| EMILY RAFI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

The matter before the Court places it in an unenviable position.  Defendants Emily Rafi's ("Rafi") and Robert D. Candage ("Robert") and Raymond L. Candage, Jr., M.D.'s ("Dr. Candage") (collectively, "the Candages") competing motions for summary judgment ask the Court to decide whether life insurance benefits should be paid to the decedent's minor child (who is not named as beneficiary on the policy) or to the decedent's brother Robert (who is the named beneficiary on the policy).

It is clear to the Court given the lack of planning in this matter that none of the parties, including the deceased, his father, brother and wife, anticipated such an early and untimely death. Against that backdrop, the Court strongly encouraged the parties to compromise and resolve the matter among them while they had control of the outcome.  Resolution, however, could not be reached and the Court must now resolve the matter pursuant to applicable law.

(5:09-CV-0777)

Based upon the facts of this case and for the following reasons, the Court denies Rafi's motion for summary judgment and grants the Candage's motion for summary judgment.

## I.  Procedural Background

Plaintiff Northwestern Mutual Life Insurance Company ("NML") filed its Complaint for Interpleader on April 6, 2009.  NML asked the Court to "enter an order setting forth the proper recipient of the proceeds due under the Policy."[1]  The policy at issue insured the life of Raymond L. Candage, III ("Candage, III") for $500,000.  NML claimed no interest in the proceeds of the policy to which Rafi and Robert both claimed rights.

On May 13, 2009, the Court Ordered NML to deposit the proceeds of the life insurance policy, $522,660.92, into the registry of the Court.  On the same date, the Court granted the Joint Motion for Temporary Restraining Order and Preliminary Injunction against duplicative state court actions between or among any of the parties.  On May 18, 2009, Rafi filed her Answer to the Complaint, a Crossclaim against the Candages and a Counterclaim against NML.  On May 29, 2009, the Candages filed their Answer to the Complaint, a Crossclaim against Rafi and a Counterclaim against NML.  Pursuant to all Defendants' stipulation, the Court excused NML form participating further in the proceedings on June 5, 2009.  Additionally, all Defendants agreed to voluntarily dismiss their respective Counterclaims against NML with prejudice and to dismiss pending state court actions against NML with prejudice.  The Court noted that NML remains a party to the action to allow continuing jurisdiction.  Concomitantly, the Court stayed the case to allow mediation and subsequently vacated the stay on August 6, 2009.

---

[1]  ECF No. 1 at 5.

(5:09-CV-0777)

On April 18, 2010, the Candages filed their motion for summary judgement.  Rafi, on

April 21, 2010, filed her motion for summary judgment.  The Candages filed an opposition to

Rafi's motion for summary judgment on May 19, 2010.  The Court, on June 24, 2010, Ordered

counsel to file any additional relevant and undisputed facts.  Both parties complied.  On July 22,

2010, the Court filed a summary of what it found to be undisputed material facts concerning the

competing motions for summary judgment and scheduled oral argument that was held on July 28,

2010.  During oral argument, the Court Ordered mediation and appointed Annette Butler as

mediator.  The parties did not resolve their dispute during the August 27, 2010 mediation

conference.

## II.  Factual Background

In 1999, Dr. Candage purchased two life insurance policies, one covering his son Robert

Candage and the other covering his son Raymond Candage, III (the deceased).  Each brother was

the insured and owner of their respective policy and was named the sole primary beneficiary on

the other's policy with Dr. Candage as the sole contingent beneficiary on Candage, III's policy.

NML issued Candage, III's policy ("the Policy") on December 30, 1999.  Section 8.2 of the

Policy provides that the owner may name and change the names of the beneficiary of the death

proceeds while the insured is living.  Candage, III did not change the name of the beneficiary,

Robert Candage, on the Policy prior to his death.

Emily Rafi and Candage, III married on May 20, 2006.  Evan Candage, the child of

Candage, III and Rafi, was born on December 29, 2006.  On December 20, 2007, Rafi filed a

petition for dissolution of marriage in Kane County, Illinois.  Subsequent to filing for divorce,

-3-

(5:09-CV-0777)

Rafi moved to Michigan with her son, Evan.  During the divorce proceedings that occurred

between December 2007 and December 2008, Rafi was represented by her counsel, Erika J.

Rahden ("Rahden"), and Candage, III was represented by his counsel, Joseph Del Preto ("Del

Preto").

Attorney Rahden drafted and circulated three drafts of a proposed marital settlement

agreement.  Rahden sent all three drafts to Del Preto. Rahden sent the first draft marital

settlement agreement ("MSA") to Del Preto on November 15, 2007.[2]  Rahden sent the second

and third draft MSAs on September 22 and November 20, 2008, respectively.  All three draft

MSAs circulated by Rahden contained Section 13.4 which provided as follows[3]:

> . . . this Agreement and all of its provisions shall be incorporated into any such
> Judgment for Dissolution of Marriage, either directly or by reference, and upon entry
> of said judgment, this Agreement shall come in full force and effect but in no event
> shall this Agreement be effective or of any validity unless a Judgment for Dissolution
> of Marriage is entered in the pending case referred to hereinbefore. . . .

The September 2008 MSA sent to Attorney Del Preto contained the following provision

concerning life insurance[4]:

> <u>Life Insurance</u>: RAY shall maintain his existing life insurance policies naming the
> minor child, EVAN as an irrevocable beneficiary, naming EMILY as trustee, until
> the minor child EVAN graduates from college or obtains the age of 23, so long as he
> is enrolled as a full-time student, whichever occurs first. RAY agrees that they will
> not add any new or additional beneficiaries thereon during the time this provision is
> in force and effect. RAY agrees to promptly pay as due, any existing indebtedness

---

[2]  None of the parties could locate the 2007 MSA draft.  Rahden testified that upon
making revisions to the 2007 MSA, she electronically wrote over the 2007 MSA draft.

[3]  ECF No. 61-11 at 12.

[4]  ECF No. 61-11 at 4.

-4-

(5:09-CV-0777)

thereon. RAY further agrees to refrain from further borrowing against, mortgaging, pledging, or otherwise encumbering any of said policies during the term thereof.

Del Preto responded to the September 2008 MSA by letter to Rahden on October 22, 2008.

Concerning the proposed life insurance provision, Del Preto replied[5]:

Paragraph 5.7 should be modified to reflect the fact that each party will retain life insurance in the amount of $250,000.00 with the minor child listed as the beneficiary.

On November 20, 2008, Rahden, counsel for Rafi, responded to the October letter of Del Preto, and stated in relevant part as follows[6]:

4. Life Insurance - Agreed.

Three issues remained in dispute in every version of the MSA: 1) Custody/Visitation, 2) Child Support and 3) the Marital Residence.

In anticipation of the December 17, 2008 pretrial conference scheduled in the divorce action in Kane County, counsel for Rafi and Candage, III filed pretrial memoranda.[7]  The pretrial memorandum of Emily Rafi prepared by Rahden stated with respect to life insurance as follows[8]:

Life Insurance - Each party will maintain a life insurance policy with a death benefit of at least $250,000.00 naming the minor child as the only irrevocable beneficiary.

---

[5]  ECF No. 61-12 at 2.

[6]  ECF No. 61-13 at 2.

[7]  Counsel for the Candage's contends that the attorney for Candage, III (Del Preto) did not file any pretrial memorandum with the Kane County Circuit Court.  Notwithstanding this contention, whether or not Del Preto filed the pretrial memorandum does not alter the Court's analysis or decision as discussed below.

[8]  ECF No. 61-15 at 3.

(5:09-CV-0777)

The pretrial memorandum of Raymond Candage, III prepared by Del Preto stated with respect to life insurance as follows[9]:

> D.     Each party will maintain life insurance in the amount of $250,000.00

The Kane County Circuit Court continued the December 19, 2008 pretrial conference and rescheduled it for February 27, 2009.

Candage, III was killed in a vehicular accident on December 21, 2008.  Thus, no pretrial conference ever took place.  On February 19, 2009, the Kane County Circuit Court dismissed Rafi's petition for dissolution of marriage.  As a result, the Kane County Circuit Court never issued any orders regarding custody, child support, life insurance or any other matter relating to the marital settlement agreement.  Neither Rafi nor Candage, III approved, either orally or in writing, any version of the draft MSAs or procured any life insurance policies in the sum of $250,000 designating Evan Candage as the primary beneficiary.  Further, a review of the totality of the circumstances surrounding the marital dispute between Emily Rafi and Raymond Candage, III strongly suggests that custody of Evan Candage was going to be awarded to his mother and his father was going to be obligated under the law to pay child support to Emily Rafi on behalf of their son, Evan Candage.  Ultimately, Rafi and Candage, III were not divorced and Rafi survived Candage, III as his widow.

### III.  Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and

---

[9]  ECF No. 61-23 at 3.

(5:09-CV-0777)

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion."  *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Rule 56 requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony."  *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (*citing Biechell v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit").  Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson v. Liberty Lobby*, 477

-7-

(5:09-CV-0777)

U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250.  Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

"The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (*citing John v. State of La. (Bd. of Tr. for State Coll. & Univ.)*, 757 F.2d 698, 705 (5th Cir.1985)).  In fact, the standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation.  The fact that both parties have moved for summary judgment does not mean that the Court must rule in favor of one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts.  *See Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948) (the fact that both parties move for summary judgment does not require the court to find that no issue of fact exists).

-8-

(5:09-CV-0777)

In the instant case, both parties seek to resolve this case through summary judgment.  The Court reviews each party's motion separately and determines whether a judgment may be entered in accordance with the standards of Rule 56.  If, however, there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the Court will render judgment.  Both motions must be denied if the Court finds that there is a genuine issue of material fact.

## IV.  **Analysis**

The crux of this case is whether the Court should create a constructive trust funded with the proceeds from the life insurance policy of the decedent, Raymond Candage, III.  The Policy's named beneficiary is Candage, III's brother, Robert Candage.  Defendant Emily Rafi asks the Court to utilize its equitable powers and determine that her son, Evan, is a rightful beneficiary of the Policy pursuant to terms allegedly agreed upon during the pendency of divorce proceedings between Rafi and Candage, III.  There appears to be no dispute among the parties that Illinois law controls the outcome of this case.  Therefore, and according to Illinois law, the Court must determine if Rafi and Candage, III formed and are bound by a valid marriage settlement agreement (contract) establishing Evan's rights to the Policy's proceeds in order to create and fund a constructive trust for his benefit with the Policy's proceeds and thereby circumvent the rights of the validly named beneficiary to the Policy, Robert Candage.

### A.  **There is No Binding Marriage Settlement Agreement**

Before determining whether establishing a constructive trust is the proper remedy pursuant to Illinois law in this situation and whether the Court has the power to do so, there must exist a basis in fact and law for the Court to employ such a remedy.  For such a basis to exist,

(5:09-CV-0777)

there must have been a binding agreement between Rafi and Candage, III establishing Evan's

rights to the Policy's proceeds and thus, override the rights of the Policy's named beneficiary.  As

discussed below, the facts of this case do not support the establishment of a constructive trust

with the proceeds of the Policy.

Rafi concedes "that Robert Candage, and not Evan Candage, was named as the

beneficiary on [the Policy]."[10]  Rafi also concedes "that no final divorce decree had been entered

by an Illinois Court at the time of Candage III's death."[11]  Despite these uncontested facts, Rafi

submits that a binding separation agreement had been reached between her and Candage, III

concerning the issue of life insurance.  The facts and law do not support this theory.

Rafi directs the Court to several cases to support her argument.  The first is *Thatcher v.*

*Eichelberger*, 102 Ill. App.3d 231, 429 N.E.2d 1090 (Ill. App. 1981).  *Thatcher* involved an oral

settlement agreement made and agreed upon by the parties during a pretrial conference that the

trial court docketed, thereby memorializing the stipulated terms.  Approval of the probate court

had also been obtained.  Finding that no mistake occurred to serve as a basis for setting aside the

agreement, the appellate court found the agreement binding upon the parties.

In *Stone v. McCarthy*, 206 Ill. App.3d 893, 565 N.E.2d 107 (Ill. App. 1990), the parties

entered an oral agreement on all terms and were in the process of memorializing the agreement in

writing.  After the oral agreement, one of the parties changed a term in the written agreement that

the appellate court found to be immaterial.  The appellate court held the oral agreement binding

---

[10]  ECF No. 63 at 6.

[11]  ECF No. 63 at 6.

(5:09-CV-0777)

and that allowing a party to change terms after an oral agreement is made and not find the oral

agreement binding would "undermine the foundations of equitable jurisprudence."[12]

*In re Marriage of Vella*, 237 Ill. App.3d 194, 603 N.E.2d 109 (Ill. App. 1992), established

that a properly executed written marital settlement agreement is binding even though the

dissolution of the marriage never took place.  The settlement agreement at issue in *Vella* did not

contain a clause declaring that the validity of the entire agreement was contingent upon the entry

of a divorce decree.  The parties signed the agreement in anticipation of finalizing the divorce,

but the appellate court found that such "a factor which motivated the parties to execute the

agreement, [] was not a condition necessary for the terms of the agreement to become

effective."[13]

The facts of these cases are distinguishable with the instant case.  In *Thatcher* and *Stone*,

the parties entered into oral agreements on all terms and were no longer negotiating terms.  In

*Vella*, there was a signed marital settlement agreement with no condition precedent contingency

clause.  Here, Rafi and Candage, III never entered into an oral agreement on any terms.  Their

respective pretrial motions contained at least three issues that remained in dispute.  Parsing the

language of the pretrial motions further reveals that Rafi and Candage, III may have agreed on

the concept of the life insurance issue generally, but the apparent understandings as to insurance

coverage for their son certainly do not constitute evidence of a complete and global agreement on

---

[12] *Stone*, 565 N.E.2d at 113.

[13] *In re Marriage of Vella*, 603 N.E.2d at 113.

(5:09-CV-0777)

the specific terms of the life insurance issue.  In fact, the pretrial conference never occurred.

And, most important, the draft MSAs contained Section 13.4 which provided as follows[14]:

> . . . this Agreement and all of its provisions shall be incorporated into any such Judgment for Dissolution of Marriage, either directly or by reference, and upon entry of said judgment, this Agreement shall come in full force and effect *but in no event shall this Agreement be effective or of any validity unless a Judgment for Dissolution of Marriage is entered in the pending case referred to hereinbefore*. . . .

Rafi is essentially asking the Court to enforce one provision of the MSA at the exclusion of all other terms based on the exchange of three MSA drafts and the pretrial conference memorandums for a conference that never occurred.[15]  Rafi even goes so far to state that "[t]here was no intention ever expressed by the parties that that agreement was somehow dependent upon the court granting a divorce."[16]  Given that each of the three draft MSAs included Section 13.4 (drafted by Rafi's attorney) that explicitly and expressly sets forth the condition precedent of a court judgment for dissolution for the MSA to be effective and valid, Rafi's statement is perplexing.  Rafi has not directed the Court to authority that supports the proposition that the Court can enforce one provision of a contract and ignore another that expressly establishes a condition precedent to create the binding obligations set forth in the entire agreement.

---

[14]  ECF No. 61-11 at 12 (emphasis added).

[15]  If the Court were to grant Rafi's request to enforce the life insurance provision of the MSA, then what prevents the Court from enforcing the other provisions of the MSA? Specifically, section 13.4.  Rafi fails to explain why only the life insurance provision of the MSA is binding on Candage, III and not all of the other so-called undisputed provisions of the MSA.

[16]  ECF No. 63 at 10.

-12-

(5:09-CV-0777)

Based upon the basic principles of contract law, the Court finds that no binding MSA existed between Rafi and Candage, III.  Rafi and Candage, III never signed a written MSA nor did they orally agree to the terms of an MSA.  Further, the Court finds support that an agreement could not exist given the inclusion of Section 13.4 setting forth the parties intent to abide by a condition precedent (which was never satisfied) to bind them under the terms of an MSA. Illinois law is clear on this matter[17]:

> The fact that the parties anticipate executing a formal contract does not necessarily establish that their prior agreements were mere negotiations. ( *Chicago Investment Corp. v. Dolins* (1985), 107 Ill.2d 120, 126, 89 Ill.Dec. 869, 481 N.E.2d 712.) However, where the evidence establishes that they construed the execution of a formal agreement as a condition precedent to the creation of binding obligations, there is no contract until the formal document is executed. 107 Ill.2d at 127, 89 Ill.Dec. 869, 481 N.E.2d 712.

Given that there is no binding marriage settlement agreement between Rafi and Candage, III establishing Evan Candage's rights to all or part of the Policy's proceeds, the Court recognizes the existence of a validly named beneficiary to the Policy and denies the use of its equitable powers to direct the Policy's proceeds from that beneficiary to a constructive trust for the benefit of Evan Candage.

### B.  Illinois Law does not Impose a Legal Duty on a Non-divorced Parent to Support a Minor Child After the Parent's Death

Rafi argues that Candage, III was under a legal duty to support Evan and thus Evan had a vested right in the Policy's proceeds allowing the Court to create a constructive trust under its equitable powers.  Rafi directs the Court to statutory and case law that is not applicable to the

---

[17] *In re Marriage of Click*, 169 Ill. App.3d 48, 54, 523 N.E.2d 169, 173 (Ill. App. 1988)

-13-

(5:09-CV-0777)

facts of this case.  The statute Rafi cites, IL ST Ch 40 ¶ 510(d), controls only if a written

agreement or judgment exists obligating a parent to provide child support.  Further, IL ST Ch 40

¶ 510(d) states that the obligation is not terminated by the death of the parent.  Here, the Kane

County Court never issued a judgment dissolving the marriage between Rafi and Candage, III.

As found above, a binding MSA did not exist between Rafi and Candage, III.  Thus, the notion

that Illinois statutory law imposed a legal duty on Candage, III to provide support to Evan after

his death is incorrect.

Rafi also cites *In Re Marriage of Raad*, 301 Ill. App.3d 683, 704 N.E.2d 964 (Ill. App.

1998), to support the theory that a formal order does not need to exist to obligate a parent to

support a minor child.  That case, however, does not provide the support Rafi needs to prevail on

this issue.  The language of the case that Rafi relies upon suggests only that *after a divorce*, "both

parents have an obligation to financially support their children."[18]  Here, Rafi and Candage, III

were never divorced; Candage, III died prior to the conclusion of the divorce proceedings.

Accordingly, any supposed legal duty owed by Candage, III never existed pursuant to Illinois

statute or case law.[19]

---

[18]  *In Re Marriage of Raad*, 704 N.E.2d at 968.

[19]  Rafi also claimed in her brief that the Kane County Court issued temporary support orders against Candage, III.  ECF No. 63 at 13.  The Candages vehemently dispute this factual assertion.  ECF No. 64 at 15.  The record before the Court does not evidence a temporary support order issued by any Illinois court.

(5:09-CV-0777)

The remainder of Rafi's arguments rely upon a binding MSA, a judicial order of divorce or controlling Illinois law, none of which are present. Thus, Rafi's remaining arguments are not well taken.[20]

### V. Conclusion

Based on the foregoing analysis, the Court GRANTS summary judgment on behalf of the Candages.

Accordingly, the Court finds: 1) there is no binding marriage settlement agreement between Rafi and Candage, III establishing rights to all or a part of the Policy's proceeds for the benefit of Evan Candage and 2) Illinois law does not impose a duty on Candage, III after his death to support his minor child. Given that, the Court declines to employ its equitable powers to establish and fund a constructive trust with any of the proceeds from the Northwestern Mutual Life Insurance Company life insurance policy owned by Raymond Candage, III that listed Robert Candage as the sole primary beneficiary.

Furthermore, the payment of the proceeds is stayed for a period of forty (40) days from the date of this Order. After the forty (40) day period, the Clerk is directed to release the funds held in the registry of the Court to Robert D. Candage as the lawful beneficiary to the proceeds of

---

[20] The Court appreciates the efforts of the mediator, Annette Butler, who earnestly tried to settle this case but failed. The Court is still of the view that some resolution to the dispute is possible and suggests to counsel that some form of settlement that would be to the benefit of Evan Candage's education or otherwise, should be sincerely and genuinely pursued to avoid any further breakdown of the familial relationship.

(5:09-CV-0777)

the Policy.  If an appeal is filed, the Court will consider a motion for a stay with respect to the

distribution of funds upon a showing of good cause.  Each party shall bear their own costs.


      IT IS SO ORDERED.


  October 19, 2010                                       *s/ David D. Dowd, Jr.*
Date                                            David D. Dowd, Jr.
                                                      U.S. District Judge